# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GERALD MUISE, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-19-134-SPS |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** [1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Gerald Muise, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing (Tr. 82). He has a high school education and has worked as a tire repairer, bridge worker, and diesel mechanic (Tr. 82, 97). The claimant alleges that he has been unable to work since December 1, 2016, due to three surgeries on his right knee in the preceding six years and inability to sit or stand for long periods (Tr. 236).

### Procedural History

On November 15, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 18, 177-78). His application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 6, 2018 (Tr. 59-71). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with occasional kneeling, crouching, crawling, or climbing ramps or stairs (Tr. 63). Additionally, the ALJ found the claimant could perform

simple, repetitive tasks, and could relate to supervisors and co-workers superficially but could not work with the public (Tr. 63). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, electrical assembly worker, document preparer, and polisher (Tr. 69-70).

## Review

The claimant contends that the ALJ erred by failing to: (i) evaluate all of his impairments at step two, (ii) consider the combined effect of all his impairments when formulating the RFC, (iii) properly evaluate the opinions of treating physician Dr. O'Neal and nurse practitioner Mr. Broniste, (iv) include all of his limitations in the hypothetical question posed to the vocational expert ("VE"), and (v) identify jobs existing in significant numbers that he could perform. The Court agrees that the ALJ erred in evaluating the opinions of Dr. O'Neal and Mr. Broniste.

The ALJ found that the claimant had the severe impairments of status-post surgeries of the right knee, status-post pelvic surgeries, sleep apnea, obesity, and posttraumatic stress disorder (PTSD), but that his right wrist impairment was nonsevere (Tr. 61). The relevant medical records reveal that the claimant was involved in a motor vehicle accident while riding his motorcycle on November 8, 2013, which caused, *inter alia,* a pelvic ring injury with symphyseal disruption and right sixth iliac joint disruption, and a right distal radius fracture (Tr. 1403-05). On November 11, 2013, the claimant underwent an open reduction and internal fixation of his pubic symphysis and placement of a right iliosacral screw (Tr. 1403). On November 13, 2013, the claimant underwent an open reduction and internal

fixation of the right distal radial fracture (Tr. 1403).  By February 20, 2014, the claimant had five degrees of wrist extension, but nearly full pronation, supination, and flexion (Tr. 815).  Dr. Stafford released him to return to work with a restriction of no lifting over fifteen pounds with the right hand (Tr. 815-16).  At a follow-up appointment on April 3, 2014, Dr. Stafford indicated the claimant's pelvic bone was healed (Tr. 811).

At his annual appointment with Dr. O'Neal on April 6, 2016, the claimant reported right knee pain and crepitus and right wrist pain with decreased range of motion (Tr. 474-77). Dr. O'Neal found decreased flexion and extension in the claimant's right wrist and pain on the medial joint line in the claimant's right knee (Tr. 476).  She referred him for an orthopedic consult (Tr. 477).

The claimant presented to Dr. Heinzelman, an orthopedic surgeon, on May 25, 2016, for "hanging and catching" in his right knee (Tr. 463-64).  An MRI of the claimant's right knee performed that day revealed mild tricompartment osteoarthritic changes and status post ACL repair (Tr. 574-75).  Dr. Heinzelman found a 2+ Lachman test, 1+ pivotal shift, and a slightly antalgic gait, but no medial or lateral instability, no joint line tenderness, and no obvious catching or clicking (Tr. 464).  He recommended a knee brace (Tr. 464).

On March 6, 2017, Dr. Dulowski performed a consultative physical examination of the claimant (Tr. 593-98).  He observed that the claimant walked with "some" antalgic gait to the right side and used a cane, although he could walk without one (Tr. 594).  Dr. Dulowski found, *inter alia,* 4/5 grip strength in the claimant's right hand and 5/5 in his left hand, good gross and fine manipulation, restrictive passive movement in his right wrist, and full range of motion in his knees (Tr. 594-95).  He assessed the claimant with status

post three surgeries on the right knee including, arthroscopic surgery, ACL reconstruction, and meniscectomy; motor vehicle accident on November 8, 2013, with sustained pelvic fracture and complex right wrist fracture; history of morbid obesity; and insomnia (Tr. 594).

State agency physician Dr. Ronald Painton completed a physical RFC assessment on November 28, 2016 and found the claimant could perform light work with occasional kneeling, crouching, crawling, and climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds (Tr. 110-11). His findings were affirmed on review (Tr. 128-29).

At his annual appointment with Dr. O'Neal on June 5, 2017, the claimant reported intermittent swelling and burning over his shoulders and back, right knee pain, and right wrist pain with decreased range of motion and worsening numbness (Tr. 631-36). She indicated the claimant's condition had been static since his November 2013 motor vehicle accident with little expectation of continued improvement (Tr. 631). Dr. O'Neal found decreased flexion and extension in the claimant's right wrist and pain on the medial joint line in his right knee (Tr. 636).

Additionally, Dr. O'Neal completed a Physical Medical Source Statement ("MSS") on June 5, 2017 (Tr. 603-07). She opined that the claimant could frequently lift ten pounds, could sit/stand/walk no more than forty-five minutes at a time, required breaks at will, and could not perform work activities for longer than forty-five minutes per hour (Tr. 603-04). As to postural limitations, Dr. O'Neal indicated the claimant could balance two-thirds of an eight-hour workday but could only climb, squat, kneel, crouch, bend, or stoop for less than one-third of an eight-hour workday (Tr. 604). Regarding manipulative limitations,

Dr. O'Neal found the claimant could reach in all directions and finger two-thirds of an eight-hour workday, but could only handle, grip, or feel between one-third and two-thirds of an eight-hour day (Tr. 604). She described the claimant's limitations as part time work only or no substantial work (less than ten hours per week, regardless of restrictions) (Tr. 606).

On October 31, 2017, the claimant established care at Lavaca Wellness Clinic reporting, *inter alia,* chronic pain issues related to his right knee, history of broken pelvis, and history of broken right radius (Tr. 1508, 1510). Nurse Practitioner Jonathan Broniste opined that the claimant could frequently lift less than ten pounds and occasionally lift twenty five pounds, could stand/walk for four hours total in one-hour increments, could sit for three hours total in one and one-half hour increments, was limited in his extremities for pushing and pulling, required hourly breaks, and could perform work activities for four hours total in one hour increments (Tr. 1511). As to postural limitations, Mr. Broniste indicated the claimant could climb, balance, squat, kneel, crouch, bend, and stoop for less than two hours out of an eight-hour workday (Tr. 1513). Regarding manipulative limitations, Mr. Broniste found the claimant could reach in all directions, handle, finger, grip, and feel for less than two hours out of an eight-hour workday (Tr. 1513). As support for his opinion, Mr. Broniste noted the claimant was unable to bend his right wrist in either direction, had a history of a broken pelvis with plate and bolt placement, had decreased range of motion in his right arm with numbness in his right hand, and was unable to open a bottle with his right hand (Tr. 1511). On his mental RFC assessment, Mr. Broniste indicated the claimant could not stay on pace in a work setting for at least eighty-five

percent of the day, could not perform at a consistent pace without unreasonable number and length of rest periods, and could not behave in an emotionally stable manner (Tr. 1512).

On December 13, 2017, the claimant presented to Dr. Tang for an orthopedic consultation and reported continued pivoting pain in his right knee as well as hyperextension of his left knee that began two months before (Tr. 1031-33). On physical exam, Dr. Tang found 0-110 degrees of motion in the claimant's right knee with a "little laxity" on the anterior drawer test and 0-120 degrees of motion in his left knee with a "little tenderness" along the medial patellofemoral joint (Tr. 1032). X-rays of the claimant's right knee taken that day revealed no complications and x-rays of his left knee were normal (Tr. 1032). Dr. Tang referred the claimant for an MRI of his right knee, the results of which revealed focal moderate degenerative changes involving the articular cartilage overlying the medial femoral condyle and small volume of knee joint effusion (Tr. 882-84). An MRI of the claimant's left knee was also performed the same day and revealed mild blunting of the free margin of the lateral meniscus, small volume of joint effusion, and a trace volume Baker's cyst (Tr. 880-81).

At a follow-up appointment with Dr. O'Neal on December 14, 2017, x-rays of the claimant's cervical spine taken that day revealed early degenerative changes of the lower cervical spine with no acute osseous abnormality (Tr. 885-86). X-rays of the claimant's lumbosacral spine revealed no acute osseous abnormality of the lumbar spine and stable appearance of orthopedic screw transfixing the right sacroiliac joint (Tr. 884-85). Dr. O'Neal referred the claimant to physical therapy, which he participated in from January 2018 through March 2018 with good results (Tr. 1003-10).

Dr. O'Neal completed a second MSS on April 17, 2018 (Tr. 800-04). Her opinion was similar to her June 2017 MSS, except she found that the claimant could sit/stand/walk for eight hours total in one-hour increments, was limited in pushing and pulling with his extremities, required three or four breaks in an eight-hour workday, could perform work activities for eight hours, could perform all postural activities for less than one-third of an eight-hour workday, could handle and feel two-thirds of an eight-hour day, and could finger one-third to two-thirds of an eight-hour workday (Tr. 800-02). Dr. O'Neal indicated the claimant's chronic pelvic pain after fracture, right wrist pain after fracture, knee pain, back pain, and self-reports, along with her own observations, supported the limitations assessed (Tr. 802).

On April 18, 2018, the claimant presented to Dr. Hamby for pain and instability in his right knee (Tr. 1401-02). Dr. Hamby found the claimant had "fairly good" foot and ankle range of motion without pain, twenty degrees of internal rotation and forty degrees of external rotation with slight pain in his right hip, and crepitus and some tenderness medially and anteromedially in his right knee (Tr. 1401).

In his written opinion, the ALJ gave no weight to Dr. O'Neal's June 2017 opinion and gave some weight to her April 2018 opinion concerning the claimant's work-related limitations, finding they were inconsistent with the medical record, specifically Dr. Hamby's April 2018 exam and Dr. Tang's December 2017 x-rays (Tr. 69). The ALJ's analysis is legally deficient for several reasons. The medical opinions of a treating physician such as Dr. O'Neal are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with

other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

    First, the ALJ failed to analyze Dr. O'Neal's opinions in accordance with the *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."'), *quoting Watkins,* 350 F.3d at 1300. Although the ALJ referenced the correct analysis at the beginning of step four, he did not mention or discuss any of the factors when analyzing Dr. O'Neal's opinion. This analysis was important here because Dr. O'Neal was the only treating physician in the record who opined as to the claimant's limitations.

Additionally, although the ALJ referred to specific evidence when discussing the inconsistencies between Dr. O'Neal's opinions and the evidence of record, he minimized or mischaracterized it.  For example, the ALJ noted Dr. Hamby's finding that the claimant had twenty degrees of internal rotation and forty degrees of external rotation with slight pain in his right hip, but this finding reflects that the claimant's internal rotation is half of normal, and therefore supports Dr. O'Neal's opinion rather than contradicts it (Tr. 69) Similarly, the ALJ referenced Dr. Tang's December 2017 knee x-rays, but overlooked the claimant's January 2018 MRI that revealed moderate degenerative changes in the claimant's right knee (Tr. 69, 882-84).  This is improper picking and choosing.  *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).  *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

The claimant also argues that the ALJ failed to properly consider Mr. Broniste's October 2017 MSS.  Social Security regulations provide for the proper consideration of "other source" opinions such as the opinion provided by Mr. Broniste herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. § 404.1527), *quoting* Soc. Sec. Rul.

06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. § 404.1527(c). Here, the ALJ mentioned Mr. Broniste's MSS, but wholly failed to apply these factors when evaluating it. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Additionally, the ALJ engaged in picking and choosing among the evidence because he relied on the same evidence to find Mr. Broniste's opinion inconsistent with the record as he did to find Dr. O'Neal's opinion inconsistent with the record (Tr. 69). For the same reasons discussed above, this was also error as to Mr. Broniste's opinion. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Because the ALJ failed to properly evaluate the opinions of Dr. O'Neal and Mr. Broniste, the decision of the Commissioner should be reversed and the case remanded for

further analysis by the ALJ. If such analysis results in an adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of November, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**